**WIGGS et al. v. FLATT et al.**

No. 20759. Opinion Filed Dec. 8, 1931.

Rehearing Denied Jan. 12, 1932.

Scott Ferris and Don Welch, for plaintiffs in error.

Tom D. McKeown, for defendants in error.

J. E. Whitehead and C. F. Green, for defendant and cross-petitioner James E. Whitehead.

KORNEGAY, J. The beginning of the case was March 26, 1928. Its object was to recover possession of 20 acres of land in section 36, township 5 north, range 4 east, in Pontotoc county. Its occasion was an oil apparition. Lucy Ann Wesley, a Choctaw of one-half blood, received the land as part of her allotment, according to the pleadings, but it appears to be admitted that she died before the land was allotted. The patent covering the land in question is dated September 12, 1906, with notation that the certificate was dated December 20, 1904, and it was surplus land. According to the findings of the referee, appointed by the court, the allottee died intestate January 18, 1904, leaving as her heirs a brother, Henry Wesley, 15 years old, Elias Wesley, 28 years old, Millie Wesley, a female, six years old, Jane Wesley, a female, 4 years old, as shown by the roll of September 25, 1902. Their exact ages, however, are not clearly shown by the evidence, but the referee's report finds the ages.

This was an action in ejectment. Plaintiff did not set out in the first instance the conveyance from the Choctaw Nation and subsequent conveyances relied on. Defendants made an unsuccessful effort to quash summons and service, and made a motion to require petition to be made more certain on June 8, 1928. Permission to file this motion out of time was granted by the court. On July 31, 1929, first amended petition was filed, covering 53 pages of the case-made. The allotment to a member of the tribe was alleged, and her death and the execution by her heirs and their grantees of the deeds relied on and copies were set out. The answer with the sole charging

words, "denies each and every allegation there contained," was filed September 4, 1928.

Our statutory provisions on the subject of actions in ejectment are as follows:

"467. Petition. In actions for the recovery of real property, it shall be necessary for the plaintiff to set forth in detail the facts relied upon to establish his claim, and to attach to his petition copies of all deeds or other evidences of title, as in actions upon written contracts; and he must establish the allegations of his petition, whether answer be filed or not."

"468. Answer. It shall be sufficient in such action, if the defendant in his answer, deny, generally, the title alleged in the petition, or that he withholds the possession as the case may be, but if he deny the title of the plaintiff, possession by the defendant shall be taken as admitted. Where he does not defend for the whole premises, the answer shall describe the particular part of which defense is made."

Our statute on the subject of allegations as to written instruments, is as follows:

"287. Verification of Denial Required, When. In all actions, allegations of the execution of written instruments and indorsements thereon, of the existence of a corporation or partnership, or of any appointment of authority or the correctness of any account duly verified by the affidavit of the party, his agent or attorney, shall be taken as true, unless the denial of the same be verified by the affidavit of the party, his agent or attorney."

Under these sections numerous decisions, showing the application, are cited by the annotator. Under these conditions, a great many obstacles were thrown in the way of getting plaintiff's evidence of title before the court, resulting finally in a referee being appointed by the court, pursuant to consent of both sides, to "make report on true conditions of title." It was agreed that in "making of his report he may use abstract No. 3201, sheets 1 to 111, inclusive." Cause was continued, pending filing of report by referee. He took oath on October 20, 1928, and reported in writing November 22, 1928. It contained findings of fact and conclusions of law as to the title, as shown by the abstract to be in plaintiffs, setting forth their respective interests, and reported the respective amounts of all the interests in the land subject to taxes from 1908, unless the judgment in the suit of Wesley v. Bd. of Co. Comm'rs, Keltner et al., barred claim. Our statutes on the subject of court trials and referee's findings are as follows:

"556. Finding by Court. Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its find-

ings, except generally, for the plaintiff or defendant, unless one of the parties request it with the view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing, the conclusions of fact found separately from the conclusions of law."

"557. Reference of Issues. All or any of the issues in the action, whether of fact or of law, or both, may be referred, upon the written consent of the parties, or upon their oral consent in court, entered upon the journal."

"558. Reference by Court, When. When the parties do not consent, the court may, upon the application of either, or of its own motion, direct a reference in either of the following cases: Where the trial of an issue of fact shall require the examination of mutual accounts, or when the account is on one side only, and it shall be made to appear to the court that it is necessary that the party on the other side should be examined as a witness to prove the account in which case the referees may be directed to hear and report upon the whole issue, or upon any specific question of fact involved therein; or where the taking of an account shall be necessary for the information of the court before judgment, in cases which may be determined by the court, or for carrying a judgment into effect, or where a question of fact other than upon the pleadings shall arise, upon motion or otherwise, in any stage of an action."

"559. Trial Before Referee—Report. A trial before referees is conducted in the same manner as a trial by the court. They have the same power as the court to summon and enforce the attendance of witnesses, to administer all necessary oaths in the trial of the case, and to grant adjournments upon such trial. They must state the facts found and the conclusions of law separately, and their decisions must be given, and may be excepted to and reviewed in like manner. The report of the referees upon the whole issue stands as the decision of the court, and judgment may be entered thereon in the same manner as if the action had been tried by the court. When the referee is to report the facts, the report has the effect of a special verdict."

No objections were urged by anyone to the conclusion reached by the referee, who found the respective interests of the parties. All the court did to "cut the Gordian knot" was the saying, "I find for the defendants generally."

The journal entry does not throw much light on the question as to why the court found for defendants "generally." One effect of finding "generally" is to put the parties to more expense to review the findings. A chain of title from the sovereign was established in plaintiffs, though the record shows

a good deal of effort was spent in establishing the execution of instruments, that, the statute says, was admitted for the purposes of the trial. Undoubtedly the referee's findings were sustained by the evidence that appears in the record to have been before the court.

It never occurred to defendants, prior to the closing of the evidence, that they were under obligation to let it be known that they claimed under tax procedure, until they got a tax deed during the progress of the litigation and after the pleadings were filed; neither did it occur to them that the champerty statute was controlling, though the claim of plaintiff's title was set out in its entirety. Most clearly a tax certificate to ripen into a tax deed to bar plaintiff's claim was an affirmative defense. See Laurel Oil & Gas Co. v. Anthony, 62 Okla. 94, 162 P. 203. See, also, the case of Kurz v. Stafford, 135 Okla. 121, 274 P. 674, the first section of the syllabus being as follows:

"Whenever a defendant intends to rest his defense upon any fact which is not included in the allegations necessary to the support of plaintiff's case, he must set it out. Any fact which avoids the action, and which the plaintiff is not bound to prove in the first instance in support of it, is new matter and must be specifically pleaded."

Reliance, not in the original pleading, but after practically all evidence was in, was placed by the defendant on section 1679, C. O. S. 1921, as follows:

"1679. Buying or Selling Pretended Titles. Any person who buys or sells, or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof, or the person making such promise or covenant has been in possession, or he and those by whom he claims have been in possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof for the space of one year before such grant, conveyance, sale promise, or covenant made, is guilty of a misdemeanor. Provided, however, that the provisions of this section shall not be construed to be a restriction or limitation upon the sale of Indian lands by the allottees or the heirs of such allottees of their inherited interest in said lands."

This section became effective March 31, 1915.

According to the evidence adduced on the supplemental motion for new trial, defendants' possession began December 11, 1915, by entering pursuant to agreement with a tenant then occupying the premises who paid rent to the Mullens, who were grantors of some of the plaintiffs, for that year, rent being paid October 25th of that year. Clear-

ly the deeds of the minor Indians who became of age, according to the rolls, in 1914 and 1916, could not be champertous under this statute. James E. Whitehead derived title to his one-fourth from Jane Anderson after she became of age, December 2, 1916, and there is no room for the application of the statute as to his part. The defendants, having acquired possession in December, 1915, are not concerned in deeds being champertous prior to that time. The deed of Keltner to Wiggs for one-half interest was made prior to said time. There is nothing in the record to indicate prior to December 11, 1915, any holding adverse to the record owners. The Mullens parted with their rights May, 1927, but there is no proof justifying a finding of a holding at that time by the defendants of the land other than by being let into possession by a tenant in possession for the remainder of his term, expiring December 31, 1915, and a holding over without demand for possession.

The decisions collated by the annotator of the 1921 Statutes, under section 1679, show that champerty will not aid defendants in this instance. See Flesher v. Callahan, 32 Okla. 283, 122 P. 489, and Longfellow v. Byrne, 68 Okla. 314, 174 P. 745. As to the tax certificate and tax deed based thereon, relied on, we think the sale was void, under the evidence, and the deed was void, which was dated September 26, 1928, and recorded November 26, 1928. The early case of Wilson v. Wood, 10 Okla. 279, 61 P. 1045, and Mattocks v. McLain Land Co., 11 Okla. 433, 68 P. 501, cited by plaintiffs in error, are tax deed attacks based on the statutory provisions requiring an assignment of the interest of a certificate holder to be shown by an acknowledgment of the assignment. Those cases hold that a tax deed so issued is void, the assignment being void for lack of acknowledgment. The case of Wilson v. Wood is based on the statute prescribing the acknowledgment, as well as upon the statutory requirement for the execution and acknowledgment of conveyances intended to affect third persons.

The Mattocks Case was reasoned on the wording of the statute specifically requiring the acknowledgment. The statute in force when the purchase in this case was made, as to assignment of a tax certificate, is section 7403, R. L. 1910. The section authorizing the purchasing in this case by the county is section 7406, R. L. 1910. Section 7408, R. L. 1910, is the section in force when the transfer was made, and was amended in the Session Laws of 1919, chap. 130, sec. 2. As amended, it changes the phraseology by substituting for "the certificate held by said county" the words, "a certificate of pur-

chase to said real estate." Section 5266, C. O. S. 1921, in force since statehood, requires an acknowledgment before a notary to entitle an instrument affecting real estate to be recorded. Section 5267 provides for the admission of instruments, acknowledged and recorded in substantial compliance with the chapter on conveyances, to be received in evidence. The reasoning of the court in the cited cases, therefore, appears applicable to the certificate of purchase, made to the county, which is relied on here as the foundation for the tax deed.

Further attack is made on the tax deed because it embraced penalties unauthorized by reason of failure to notify the taxpayer of the taxes demanded. Williams v. McGill, 69 Okla. 60, 169 P. 1074, is cited to that effect. See, also, Clark v. Duncanson, 79 Okla. 180, 192 P. 806; Adams v. Toliver, 91 Okla. 125, 217 P. 851. These cases sustain the position. Under them, and the evidence herein, the tax deed was void. Several other attacks are made, but we do not deem it necessary to proceed further. The tax proceedings evidently should have been pleaded and should have shown compliance with statutory requirements. Plaintiffs in error claim that the judgment was not warranted by the evidence, and the court erred in refusing their motions.

This case should be reversed and remanded for new trial. Parties, if they desire, should be allowed to recast their pleadings. It is accordingly reversed and remanded for new trial at the costs of the defendants in error in this court, costs incurred on the trial below to be borne by defendants in error, costs prior to trial to abide the final resuit.

LESTER, C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., not participating.